Case number 21-3252, U.S.A. v. Elmer Jones. All arguments not to exceed 15 minutes per side. Mr. Paul Croucher for the appellant. May it please the court, I'm Paul Croucher representing appellant Elmer Jones. I'd like to reserve five minutes for appeal. We have five issues in this case, your honors. I'd like to primarily focus on assignments of error three and four. The most important assignment of error three because I think it largely drove everything that happened in this case. Mr. Jones had given a proffer which comes up in assignment of error four. The case probably would have played out but for the involvement of a disbarred attorney who was advising Mr. Jones specifically in great detail about the speedy trial issue which the trial court rejected. I have argued it here because it is not frivolous but I don't have a whole lot of belief that the court will agree with me on the speedy trial violation. But the focus here really is this disbarred attorney, the trial court discouraged the defendant from continuing to communicate with him but he's continued to communicate with him. What was the trial judge supposed to do? He seemed fairly adamant. He called the guy out on the phone. What else was he going to do? A formal statement that the judge could easily have caused a cessation of communications there. If the person was a family member or a friend and not a disbarred attorney, I think it would have been different. But everything that happened in this case ultimately happened because of the advice that this former attorney was giving to Mr. Jones. How do we know that? That's a sweeping statement. If everything happened it's the blame of this disbarred attorney. To answer the issue posed by you, this judge would have had to have a hearing or something to determine what advice was being provided and whether it was being done in Mr. Jones' presence as an attorney or informally as a friend and the defendant wants to talk to his friend about his case even though he's talking to a disbarred attorney. How was the district court responsible for ascertaining all the aspects of that relationship? He told the attorney not to advise the defendant legally. He told the defendant not to accept legal advice from the allegedly disbarred attorney. Why wasn't that sufficient? Your Honor, probably the best example would be the Speedy Trial Act motion that Mr. Jones submitted pro se that was written by Mr. Pappas and submitted by Mr. Pappas to Mr. Jones' appointed counsel and to the U.S. attorney as a motion that Mr. Jones was making pro se and it ended up being filed as a pro se motion by Mr. Jones to dismiss the case for a speedy trial violation. That was written by Mr. Pappas. It was discussed at some length by the trial court with him. Well, who was representing the defendant at the time that the pro se motion was filed? Appointed counsel, Your Honor. Originally, Mr. Pappas' son was appearing pro hack from California, but after the COVID problems arose, he said he was incapable because he lost his staff and he didn't have the staff. From the point of counsel's opinion, that motion should not have been filed or was not truly a pro se motion or should be disregarded by the court or anything like that? Yes, Your Honor. In fact, appointed counsel I think made three motions to withdraw as a result of the interference by Mr. Jones' friend. Well, we can characterize it as interference or we could say counsel wanted to withdraw because of the breakdown in attorney-client relationship of which the defendant's relationship with Mr. Pappas was only a symptom of the breakdown in the attorney-client relationship. But I don't know how the district judge would be able to ascertain all that. Fair enough, Your Honor. I think the frustration of district court comes through in the transcripts of phone calls that he's having with Mr. Pappas and the fact that Mr. Jones gave a full proffer to the FBI. There's an agreement, that's the fourth assignment of error. There's an agreement as to its use. He's basically confessed to He was apparently unaware or didn't care about that. It didn't advise him on that. And Mr. Jones disregards his appointed counsel's recommendations. The case goes to trial. They end up in this issue that came up on the fourth assignment of error with the trial court actually prohibiting cross-examining witnesses as to the veracity of the proffer of Mr. Jones' guilt. Basically, the trial judge says any attempt to assert innocence is prohibited. Was there, you started off saying that your plea bargain offered that was rejected by the defendant here? There was discussion of a plea bargain. At one point the U.S. attorneys said that it was interfered with, that they were never able to get to that point of having an effective plea bargain. From my perspective, I don't think that there's a record of an actual offer being made. I think Mr. Rankin may be able to speak to that as well. I think sticking with the fourth assignment of error, it's the violation of a proffer agreement. The remedy is to allow the proffer to come in. Whether that would have been beneficial to Mr. Jones or not, I think was for trial counsel to decide and for Mr. Jones to decide. That issue, we don't know what the appropriate standard of review is on the question of whether the trial court erred in prohibiting cross-examination of I thought he said they could be impeached. His testimony could be impeached by the proffer. What he said was you're prohibited. That's the problem. I thought that was the first time. I thought it was clarified at that point. That there was no prohibit, that he couldn't prohibit. I don't think he said I can't prohibit it. I think what he said was Well, the proffer agreement states that the proffer could be used for impeachment if the defendant made arguments that were inconsistent with the proffer. Yes, sir. And that's the situation we have here, is it not? It's not because what the judge said is, so I will tell you clearly you will not throughout any additional cross-examination elicit any testimony from any witnesses about the methamphetamine period. Well, the judge said that, then the judge subsequently clarified to say that such arguments opened the door for impeachment. So the judge corrected himself and made the correct ruling on that point. Well, your honor, he starts off by making a ruling, then he explains his reasoning, but as I read this, he says I do not want that to happen. Does that refer to a violation of the proffer agreement or does that refer to any assertion of actual innocence? I read that as being an explanation of his reasoning and not as a modification of his initial ruling. I thought the initial ruling was perfectly clear. Couldn't you read that language, though I do not want that to happen, to mean that the district judge was trying to protect your client and then the counsel for your client then understood that's what the district judge was saying and then decided not to pursue that line of questioning and argument? I actually think that's very likely, your honor. I think that the trial court was attempting to protect Mr. Jones from the consequences of his acts, even in getting to trial, where he clearly confessed. He'd given a full statement, a multi-page statement to the FBI agents with counsel and with a previous contract that said he was guilty in every respect. The fact that this case is here at all goes back to the third assignment of error of the trial court just didn't protect the client from the disbarred counsel. What's the prejudice on the proffer error then? What's the prejudice to your client? The prejudice is that the trial court basically violated the contract that he'd made with the FBI as to allowing the admission of the statement rather than a prohibition on the testimony. Okay, so he didn't allow the defendant's own confession to come in. How did that prejudice your client? How would the trial have come out differently? That's a good question, your honor. I don't know that it's any different. Okay, well don't you need to show some prejudice for the error? Otherwise it's harmless, isn't it? The long-term prejudice I think is unknowable. The short-term prejudice is that he was deprived of the right to cross-examine the witnesses. Thank you. Thank you, your honor. May it please the court. Daniel Reinke for the government. As far as, your honor, the question as to whether there was any plea negotiations, they were limited. There was an offer to allow Mr. Jones to plead guilty to the indictment but reserve his right to appeal the speedy trial issue. At that point, Mr. Jones declined and said he wasn't interested in any type of plea offer. That was at R141. And that was after the proffer? Yeah, it was page ID 2026. It seems odd. I don't know why. If you're going to proffer all of that, why are you going to go to trial? It seems odd. I guess that's your friend on the other side. His point is it seems odd because we have this outside interference who is giving him advice or whatever it is and that took the case off the course that it would have been on. It does seem odd to me. So maybe that has some legs. I don't know. Well, it's a question as to whether it took the case off the track it was on. I mean, there was a proffer. But after the judge denied the motion, the speedy trial motion. The pro se one? Well, the pro se one and then he also went on the record and discussed it at length. Mr. Jones didn't then say, oh, I'm now going to plead guilty even though he had the opportunity to plead guilty and repeal that ruling. He wanted to go to trial. And there's a chance that even after the trial. We don't know, but there's a chance that even after the proffer, he wanted to go to trial. The proffer was with another counsel. And part of Judge Adams' instruction during trial was and Mr. Billick admitted he wasn't the attorney during the proffer and Judge Adams, even though he started out saying he was prohibiting it, he actually did clarify it and say, the remedy is going to be if you go down this road, the government's going to be able to bring in these agents and they're going to be able to submit this testimony. So the court didn't prohibit Mr. Jones from claiming he didn't the methamphetamine, and it was basically the methamphetamine. It was the 16 pounds of methamphetamine. And the court didn't prohibit that. The court just explained, look, if you do this, you're going to open the door. And the court was concerned that he had already opened the door to that. But the court said, if you go down that road, the remedy is going to be the government can bring in these agents and they can testify. At that point, he still had the choice. If he wanted to bring in the agents and cross-examine them, he could have. But the judge said, the judge basically wanted to make sure that it was an informed decision, and he didn't want that to happen unless Jones understood that that was the course that he was on. And there are a number of cases that say that that is the appropriate remedy, if the proffer agreement, that you could waive the proffer protected statement. As far as John Pappas, when Judge Adams first learned of John Pappas' involvement, it was at a hearing on, I think, September, end of September, 2020. At that point, Damian Billick informed the judge that John Pappas had contacted him and that John Pappas also, I think he had CC'd the AUSA as well, and that he was giving, and he believed that John Pappas was Matthew Pappas' father, and that John Pappas was giving advice to Mr. Jones. At that point, Judge Adams didn't know that John Pappas was a suspended attorney. As far as he knew at that point, Damian Billick didn't know if he was an attorney or not, the government didn't know, and he asked Mr. Jones, and Mr. Jones said actually he was Matthew Pappas' father, and that he did not believe he was an attorney. At that point, Judge Adams, I think, took the appropriate step of informing Mr. Jones or advising Mr. Jones that he shouldn't take legal advice from a non-attorney, and that he should listen to his own counsel, Damian Billick, who understood the case law and the facts of this case, and that listening to John Pappas, and at this point again, who he thinks isn't an attorney. Would Judge Adams have had the power, does he have the inherent authority or something to basically say you cannot have any contact with this person anymore? I don't think so. Regardless of whether he's giving you legal advice, not legal advice, you're just not to talk to him, or I guess it would be directed at Pappas. You can't talk to this guy anymore, or you're in contempt? I don't even know if he has jurisdiction. The guy's in California. I don't see how he could do that. There was a reference to what if he wasn't a suspended attorney, he was just a friend, family member, interested person. We can kind of assume John Pappas got involved in this because of his son who represented Mr. Jones for three months before he asked to be removed. But I take it the judge did have the authority to say to him, don't give him legal advice. Yes. Only once he found out, and that goes into the next hearing on October 29th. That's the hearing that Damian Billick comes in again and he says Mr. Pappas is still involved in this case and Judge Adams decides to get Mr. Pappas on the phone. So he gets Mr. Pappas on the phone. They have a fairly animated discussion about what Mr. Pappas is doing and Mr. Pappas at that point represents himself as an airline pilot. Now I don't know at that point if Judge Adams is not an airline pilot, I'm sorry, just a pilot. He never worked for an airline. At that point if I'm charged with a crime and my neighbor says I've got all these great ideas for you Judge Adams can't say you can't talk to your neighbor. I can talk to who I want. I think the tenor of the conversation changed when Judge Adams found out and during the hearing Judge Adams apparently got If your neighbor says I'm going to draft some pleadings for you but I'm not a lawyer can the judge say you're not allowed to do that? I don't think so. He can't file them. Does the judge have inherent authority to say there will be no unauthorized practice of law in my court? Yes. The judge does have inherent authority to do that. So is Pappas engaged in the unauthorized practice of law when he drafts that motion? At that point this is when the judge finds out he's a suspended attorney as well. He didn't know he was a suspended attorney until he does his apparently Judge Adams or his court must have done some extra research and they find out this guy then he admits it essentially admits it on the phone. During the hearing Judge Adams had his staff look him up and they found out his status. Frequently in all kinds of litigation people who are pro se rely on shadow lawyers to help them whether it's a neighbor or a disbarred attorney or somebody who just doesn't want to have their name on the documents. Are there cases that say the district judge has to prohibit a party from utilizing this so-called help from non-lawyers? I don't think so. I didn't find any when we were looking and researching this. The cases that we found and that the appellant cited as well were cases dealing with that company the National Legal Professional Associates which was a company out of Cincinnati that was providing ostensible paralegal services but they were actually enjoined because they were practicing law but there was a lot more to those cases they were actually soliciting customers they were charging a fee they were large scale. Here you have just Mr. Pappas who took an interest in this case probably because his son was involved and Mr. Pappas always disputed whether he was practicing law. I think the judge ruled on the pro se motion in a way to try to assist Mr. Jones to understand that in the current climate at that point that his speedy trial motion didn't have any merit and he thought if he put it on the record and then ruled on the motion that maybe Mr. Jones would understand that the speedy trial time had been told by the general orders of the court the COVID orders and also the court's ends of justice continuances involving Matthew Pappas and then Mr. Billick to allow him to prepare. I think that's why the judge ruled on the motion not to treat he wasn't treating Mr. Pappas as an attorney he was really trying to protect Mr. Jones and allow Mr. Jones to see this isn't a good idea for you. So at that point when the district judge ruled on the speedy trial motion the defendant could have started up again negotiating with the US Attorney's Office for a plea bargain at that point? The record doesn't say but I think it's reasonable to assume that was part of Judge Adams' motivation as well as to maybe get him to rethink a possible plea. Because the proffer well I guess the proffer would have allowed him to challenge the proffer agreement would have allowed him to challenge the speedy trial issue later on, right? I believe so, yeah he wasn't precluded from that and he was actually and again the plea negotiations never really went anywhere but he was offered the opportunity to plead guilty to the indictment but preserve that issue if he wanted if he believed it was an issue worth appealing and at that point he said he wasn't interested. The speedy trial claim I think is pretty well set forth in the briefs again the judge there were five general orders that prohibited the court from actually having jury trials up until September 21st Mr. Jones was indicted on March 4th I believe those orders took effect starting March 16th and then went through September 21st and then Judge Adams also issued a number of ends of justice continuances where he adopted those orders and then gave time for Damian Billick to prepare Damian Billick had a COVID issue as well which was also two more, three more weeks that was excluded ultimately I think approximately 25 and looking again last night maybe 28 days elapsed that were countable days so a speedy trial issue I don't believe has any merit As far as removing Matthew Pappas Matthew Pappas actually asked to be admitted Pro Hoc Vitae at the end of February of 2020 the record shows that he did very little if anything between the time he was admitted until June 15th when the court had a show cause hearing which Mr. Pappas didn't show up, this is Matthew Pappas, didn't show up for he did file a response in which he said that the COVID pandemic had decimated his practice he was no longer able to represent Mr. Jones and that he asked that his Pro Hoc Vitae status be relinquished and that counsel be appointed to represent Mr. Jones the judge went through this with Mr. Jones Mr. Jones was never dissatisfied with Matthew Pappas but he realized after Judge Adams explained it that Matthew Pappas had withdrawn and there wasn't a whole lot he could do going forward as far as Matthew Pappas so they appointed Mr. Billick after the judge inquired if, the judge explained that either Mr. Jones could hire another attorney represent himself or the judge could appoint an attorney if Mr. Jones didn't have any money Mr. Jones indicated that he didn't have any more money the judge appointed appointed Damien Billick and Mr. Jones did not object as far as his sentence the judge relied on basically the amount and variety of drugs that Mr. Jones was apprehended with he had a firearm Mr. Jones did express remorse but it was very general remorse he was sorry for being involved in the drug trade that really wasn't what Judge Adams felt was a true statement of remorse being involved in the drug trade didn't acknowledge the individual harm he had done the judge indicated he would like to have heard more of that type of a statement and he implied it within guideline sentence if there are no further questions I would ask the district court to be affirmed your honor the trial court here could have issued an injunction that was the whole point in the United States v. Johnson case coming out of the 7th circuit the 7th circuit affirmed the order prohibiting the National Legal Professional Association from the unauthorized practice of law I think contrary to the judge in an early conversation with Mr. Jones transcript 65 page 281 said to Mr. Pappas I cannot stop you from communicating with him and giving him advice but that's exactly what the court needed to do this is a case kind of like the United States v. Hall which this court decided in 2000 it's 200 F 3rd 962 where Judge Martin wrote this is one of the unusual cases where the court should have stepped in to ensure an adequate legal defense for the defendant basically Judge Adams didn't do enough he didn't protect this defendant from the bad advice he was getting even though the judge discussed it on that same page I can't stop you from communicating but then he says he could rather than issue some sort of order prohibiting you from doing this this is a courtesy call I'm going to encourage you clearly it didn't work the encouragement didn't stop the communications the bad advice was vis-a-vis the speedy trial the bad advice that we can point to in the record your honor is the speedy trial and you're making a speedy trial argument on appeal so arguably isn't it a contradiction for you to say that John Pappas gave bad advice on a speedy trial defense when you in fact are making a speedy trial defense in this appeal your honor the speedy trial argument is not frivolous because I can legitimately argue that the time that Mr. Pappas' son consumed should not have been counted against his client  the client wants that position to be taken not being frivolous I have an obligation to make it as I read the case law and the rules in the same way that I've made other arguments as appointed counsel before this court I'm not accusing you of any improper conduct I was just thinking that it seemed a little bit ironic it is ironic but because Mr. Jones still believes that the advice that he received from this attorney his non-attorney was the right advice that he wants to push this hopefully I will not have an obligation to make a U.S. Supreme Court petition based upon speedy trial act but I understand my obligations may include doing so that's just part of what we sign up for I will make any non-frivolous argument that my client insists be made regardless of my advice that it not be made this is true but it also clarifies what kind of harm can be done by people like Mr. Pappas or by this National Legal Professional Associates case in the 7th Circuit that people will listen to sources that have no real power to have no obligation to do what's in their best interest and it's one thing when it's a family member or a friend but it's a whole other thing when it's an attorney it adds a belief or a former attorney it adds a belief that the person knows what they're talking about Thank you Your Honor Thank you both for your argument and the case will be submitted